No. 3122.—Succession of G. W. L. MARR, deceased—Opposition of Heirs to Administrator's Account.

An administrator is personally responsible to the heirs for money which he has received belonging to the estate he represents, if he pays the same to a person not authorized to receive it.

An administrator of an ancillary estate situated in Louisiana, whom it is shown has acted in good faith, ought not to be inflicted with the stringent penalties denounced by statute against delinquent administrators.

APPEAL from the Second District Court, parish of Orleans. *Duvigneaud*, J. *B. R. Forman*, for appellants. *Randolph, Singleton & Browne*, for appellees.

TALIAFERRO, J. The facts on which this controversy is based seem to be as follows: G. W. L. Marr died in Tennessee, and his son Richard became Administrator of his estate. Lonsdale, of New Orleans, was indebted to G. W. L. Marr in the sum of $3000, as shown by three several promissory notes of $1000 each held by Richard Marr, the administrator, who, coming to New Orleans to collect these notes, found the debtor unwilling to make payment except to an administrator appointed in Louisiana. To obviate this difficulty Richard Marr prevailed upon Robert H. Marr, the defendant in this case, to take out letters of administration in his own name, solely, as it appears, for the purpose of collecting the notes of Lonsdale. This was effected by

Robert H. Marr as administrator of the ancillary succession. About this time Richard Marr was sued in New Orleans as indorser of notes to the amount of $20,000 with interest. Robert H. Marr was retained by Richard Marr as his attorney to defend the several suits brought against him on these notes. The defense, after protracted litigation, was successful, and Richard Marr was released from his obligation as indorser. No formal account was ever presented by the Louisiana administrator. As attorney of Richard Marr in the heavy suits brought against him in New Orleans, R. H. Marr thought himself entitled to a fee of $2000. He had received on the Lonsdale notes $3052. He paid Richard Marr as administrator $700, which left a balance of $2352 in his hands. This balance R. H. Marr retained to cover costs of administration and fees due him by Richard Marr, leaving him to account as principal administrator for the cash payment made to him of $700, and for the balance applied to his individual debt. At that time Richard Marr was in possession of a large amount of property and deemed to be a man of large fortune. He was administrator of his father's estate, and under the will of the decedent the bulk of his estate was devised to Richard Marr. Under this aspect of things the Louisiana administrator rested securely in the belief that no further action was necessary on his part and rendered no account. He testifies that during the war that soon followed these proceedings, his books and papers passed from under his control. That in 1866 his desk, in which many of his valuable papers were deposited, was returned to him, but that many of his books and papers were lost, and have never been recovered. Hence he is unable to produce any written evidence of the manner or basis of settlement with any of the parties in interest in these transactions. It turns out, however, that the grounds upon which he predicated his proceedings with Richard Marr were wholly fallacious. Richard Marr proved insolvent, the will of his father was annulled, and he had been removed as administrator of his estate before he put the Lonsdale notes for collection into the hands of R. H. Marr.

Three of the four heirs of G. W. L. Marr have brought this suit to compel R. H. Marr, in his capacity of administrator, to file his account, to produce his bank book showing the separate bank account of the succession, if any such account he has kept, and to pay to each of them $3450, with twenty per cent. per annum interest for failing to make a separate deposit in bank of the funds of the succession, and that he be condemned to pay ten per cent. interest per annum from fourth February, 1861, for failing to render an account. The court below rendered judgment against the defendant in favor of each of the plaintiffs for the sum of $406, less the sum of $50, paid to Mrs. Toler, one of the plaintiffs, and to be deducted from her share. From this judgment the plaintiffs appeal.

In the year 1861 John Marr, one of the heirs, and representing the other two plaintiffs, came to New Orleans and received from R. H. Marr $1318 95 on account of his collection of the Lonsdale notes. This is established by John Marr, one of the plaintiffs, who testified that the receipt originally given by R. H. Marr to Richard Marr for the notes of Lonsdale, and upon which was indorsed this payment of $1318 95, is lost. At the time of this payment to John Marr, R. H. Marr retained $700 paid to Richard Marr as administrator, and also his portion of the proceeds of Lonsdale's notes for the fee due him as his attorney individually. He subsequently paid Mrs. Toler $50. The $700 paid to Richard Marr the Louisiana administrator must lose, as having paid it improvidently to a person not authorized to receive it. $108 80 were allowed him as commissions. This added to the $1378 95, and the sum deducted from $3052, the proceeds of the Lonsdale notes, leaves $1624 25, as ascertained by the judge *a quo*, for distribution between the plaintiffs.

We think the judgment correct. Under the peculiar circumstances of this case, there being no creditors of the succession in Louisiana, and the administrator in this State, having acted in good faith, we do not think the spirit and purpose of the strongest law invoked by the plaintiff require that its provisions should be enforced in this case.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs.