(56 South. 352.)

No. 18,453.

Succession of PUGH.

(June 17, 1911. Rehearing Denied Oct. 16, 1911.)

(*Syllabus by Editorial Staff.*)

1. WILLS (§ 568*)— CONSTRUCTION — ANNUITIES—DURATION OF PAYMENTS.

Under a will giving an annuity to a widow and her daughters, to be diminished each year till it is reduced to $600, "at which it is to remain until the death of the widow, or of the last then surviving one of the daughters," the payments do not cease on the death of the widow before that of the daughters, but continue till death of the daughter last surviving.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1241; Dec. Dig. § 568.*]

2. EXECUTORS AND ADMINISTRATORS (§ 504*) —ACCOUNTING—VALIDITY OF GIFT— PERPETUITIES—OBJECTION BY EXECUTOR.

Objection that a provision of a will for payment of an annuity to three persons and the survivors till death of the last survivor has the effect of perpetuating the succession or the executorship, in violation of the statute against trusts and perpetuities, because of one of the persons having a life expectancy of 25 years and another of 35 years, is not one to be raised by the executor, but by a person having an interest.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 504.*]

Appeal from Twenty-Seventh Judicial District Court, Parish of Assumption; Paul Leche, Judge.

Succession of Robert Pugh. From the judgment, the executor appeals. Affirmed.

Beattie & Beattie, for appellant. Howell & Caillouet, for appellees.

PROVOSTY, J. Both parties to this appeal declare in their briefs that the sole matter to be determined in this litigation is the proper interpretation of the following clauses of the will of the de cujus:

"I give and bequeath to the widow and daughters of my brother Richard, deceased, an annuity of $1,200.00, to be paid in monthly installments of $100.00 each, which annuity is to be diminished every year commencing from the first of January, 1889, by the sum of $200.00, until it is reduced to the sum of $600.00, at which it is to remain until the death of the widow, or of the last then surviving one of the daughters."

[1] The question is whether the intention was that the $600 yearly payments should cease at the death of the widow, or continue until the death of the daughter last surviving.

The argument in favor of the first of these propositions is as follows:

"Now, let us examine the words of the testament and see whether they be not so plain that there is no room for doubt—no room for interpretation.

"The bequest first provides an annuity of $1,-200. That is to be continued till the 1st of January, 1889, when it is to be reduced to $1,000. Then this goes on for three years, till January 1, 1892, when it is reduced to $800, this going on till 1895, when the annuity or legacy is reduced to $600. Then comes the words 'at which it is to remain until the death of the widow or of the last then surviving one of the daughters.' Now, does this not express clearly the intention? It remains at $600 till the widow dies, or, if the last daughter surviving. after the sum of $600 is fixed; that is, after the 1st of January, 1895.

"Here not one word is left out; not one word is left without its full force. The legacy goes on till 1895 anyhow. At that time the youngest daughter, who was about seven when the will was written, would then be at least fifteen years of age. After that, if the widow still survived, she was still to have this $600 to go to her support, unless, in the meanwhile, all of the daughters had died. It might be asked, Why cut off the bequest at the death of the widow? We might answer, Because the testator so said —so chose. But there were good reasons; the children had inherited from the decedent, under his will, and were supposed to be provided for by that inheritance. The widow was not; and she was to be provided for till her death.

"If the claim made for the opponents, and sustained by the lower court, be upheld, then the will is made to read, 'at which it is to remain until the death of the last daughter.'

"We must strike out the 'then,' and make it a useless word; used without meaning by one who clearly understood the meaning of English.

"But it is said. Why, if intended for the benefit of the widow, should the legacy continue after her death? Again we say, Because the testator so chose; because so he wrote, and, having the right to dispose, and having disposed in a manner not contrary to law, the courts will enforce.

"How are we to interpret the word 'then,' unless by the manner in which we have done? It refers, can refer, to no other time than the time at which the reduction to $600—in other words, to January 1, 1895—the legacy, was to come down to that day, calling for $800. But if at that date the widow lived, it should go on. If she had died, or if the last surviving daughter had died, when? At the time noted; that is the 1st of January, 1895, it was to cease. Why, it will be asked? Because. as we have said, the testator so willed, and could will. But there was good reason, other than that. If the daughters were all dead at that time (1895), their property was left, and four stalwart youths left to support the mother, two of whom, at least, had been educated by the testator's benevolence."

The argument contra is as follows:

"In interpreting the contested clause, two things are to be considered:

"First. To whom was the annuity left?

"Second. Upon the happening of what event or condition was it to terminate?

"1. 'I give and bequeath to the widow and daughters of my brother Richard. * * *'

"A mere reading of the sentence conclusively and satisfactorily answers the first question. No discussion or analysis of the sentence can make it clearer than the words themselves do— 'to the widow and daughters of my brother Richard.' In these persons, 'the widow and daughters,' not in one of them alone, but in all, this bequest is vested. The 'widow and daughters' are the beneficiaries of the bounty of the testator.

"2. How long is it to last, and upon the happening of what event or contingency does it terminate? Again the plain language of the will and the manifest intent of the testator fully and completely answer the question—'until the death of the widow, or of the last then surviving one of the daughters.'' If no one daughter should survive the widow, it is to terminate at her death; if one or more daughters survive her, at the death of the last then surviving one. The one who lives the longest, if she were living at the time of the death of the widow, is to continue to draw the annuity until her death. If the annuity is to terminate upon the death of the widow, why were the words 'or of the last then surviving one of the daughters' added? Why used at all? Why not stop with the words, 'until the death of the widow'? The additional words, 'or of the last then surviving one of the daughters,' were added for an evident purpose, and clearly show that two or more conditions or events must occur, or concur, to terminate the annuity; not only one, i. e., the death of the widow, but that other event must concur, i. e., the death of the last then surviving one of the daughters. Both of these things must happen to terminate the annuity—the death of the widow, and the death of the last then surviving one of the daughters.

"'Or,' used in connection with the event, upon the happening of which the interest of the widow in the bequest is to terminate—her death— is used to designate and define that other alternative event, upon the happening of which the interest of the daughters in the bequest is to terminate—the death of the last then surviving daughter. It is to last, first, until the death of the widow; or, second, if one or more daughters are then surviving until the death of the daughter last then surviving.

"The testator must be supposed to have advisedly used each word employed. If these words do not mean what we contend, they mean nothing at all. If susceptible of the meaning which we contend for, how could the idea be expressed more concisely or more clearly? The meaning contended for is congruous with the spirit and evident intent of the testator, as shown by the whole will.

"The whole will clearly shows that the testator intended to provide for the widow and children of his deceased brother Richard, showing great solicitude in their behalf. He intended to leave an annuity to the widow and daughters of his deceased brother until the death of the last survivor. If the widow should survive all of her daughters, it was to last until her death; if one or more of the daughters survived the widow, until the death of the last surviving one, or until the death of the last then surviving daughter. The language used conveys this idea, and no other: 'Until the death of the widow, or of the last then surviving one of the daughters.' 'Until,' the time —the death. 'Or' connects and is used to conjoin the two events referred to; i. e., the death of the widow (or) the death of the last then surviving one of the daughters. The daughter last then surviving. One was living; when? Then, at the death of the widow.

"If the disposition is not to be so construed, there is no provision at all defining and fixing when the interest of the daughters in the annuity shall cease. The words 'of the last then surviving one of the daughters,' read in connection with the words 'until the death of the widow,' fix and make clear the dates and events when both the interest of the widow and daughters terminate in the joint bequest. The conjunction 'or' conjoins and defines the two events upon the happening of which the annuity ceases; the widow's interest at her death, the daughters' at theirs. Both are clearly given a life estate in the annuity, because the will plainly says that, after the annuity is reduced to $600, at which sum it is to remain until the death of the widow or of the last then (referring to the death of the widow) surviving one of the daughters, clearly intending to provide for the last daughter surviving at the death of the widow until such daughter's death.

"'Or' provides for and defines two alternative contingencies, upon the happening of either of which the annuity ceases. The use of the preposition 'then,' in connection with the proviso in reference to the time when the annuity ceases, so far as the widow is concerned, qualifies the event or contingency, and defines the event or contingency when the annuity shall cease, so far as the daughters are concerned— 'at which sum it shall remain until the death of the widow or of the last then surviving one of the daughters.' If the widow survives the daughters, the annuity remains at $600 until her death; if more than one daughter is then surviving at her death, it remains until the death of the last one of the then surviving daughters, when it shall cease.

"The testator evidently intended to provide for the two alternative conditions or events:

"First. The annuity, after being reduced to $600, is so to remain until the death of the widow, and then to terminate, if at that time none of the daughters survive.

"Second. If at that time, or upon the happening of this event, two or more of the daughters survive, it is to remain at $600 until the last one of the then surviving daughters shall die, upon the happening of which event it shall cease.

"Two or more of the daughters survived the widow; two still live.

"As argued, the annuity was left to the widow and daughters, not to the widow alone, nor to the daughters alone, but to both the widow and the daughters. 'Widow' and 'daughters' are connected and conjoined by the conjunctive participle 'and.' The persons so conjoined are the objects of the beneficence of the testator. Both the widow and daughters had a property right in the annuity; the interest of the widow ceased at her death; that of the daughters at the death of the last survivor. The testator evidently contemplated that one or more of the daughters would survive the widow, and it was to provide for this contingency that he used the words 'or the last then surviving one of the daughters.'

"The preposition 'until' is used to fix the time or event upon the happening of which the annuity shall cease, both as to the widow and daughters, qualified and defined by the word 'then,' so far as the daughters are concerned. 'Until the death of the widow or the last then surviving one of the daughters.' It refers, not only to the death of the widow, but also to the death of the last then surviving daughter. The annuity was to determinate then, and then only.

"A reading of the whole will makes it clear that such was the intent of the testator, and for this we must seek. C. C art. 1712 et seq.

"Our contention is fortified by the testimony of Rev. A. S. Clark and Mrs. Mary W. Pugh (widow of Richard L. Pugh), taken at the time of the contest of the will of the deceased in 1889, before the district court of the parish of Assumption, in the Matter of Mrs. Alice McCormick et al. v. E. D. White and Taylor Beattie, Testamentary Executors, No. 2,814 of the docket. Rev. A. S. Clark testifies that, on the occasion of the funeral of Mr. Richard L. Pugh, he heard the deceased, Robert Pugh, say to the widow of Richard L. Pugh: ''Do not grieve too much" (either) "dear Mary" or "Sister Mary"—some familiar expression—"I will take care of you and your children," or "I will provide for you"—words to that effect.'

"Mrs. Richard Pugh's testimony clearly shows the great solicitude of the deceased for the widow and children of his dead brother. The testimony of these two witnesses, read in connection with the whole will, removes all possible question of doubt, if there can be any reasonable doubt, as to the meaning of the clause in question.

"This evidence was objected to on the ground that it was irrelevant and inadmissible, and could not be heard to show the intent of the testator. This intent was to be gathered for the trial of this case by the document probated.

The evidence was admitted, and bill reserved by the executor.

"The ruling of the court is sustained, not only by the jurisprudence of this state, but under the common law as well. C. C. art. 1715; [Oxley v. Clay] 7 Rob. 425; Mrs. George Burthe, Tutrix, v. Arthur Denis, Ex'r, 31 La. Ann. 568; Succession of Stewart, 51 La. Ann. 1561 [26 South. 460]; Cent. Dig. vol. 49, pars. 955–958; Id. par. 1018 (a) U. S. 1822, (h) N. Y. 1839; Vandiver et al. v. Vandiver [115 Ala. 328] 22 South. 154.

"The construction of the executor, as we understand it, is that, if, at the time the legacy is reduced to $600, the widow and one or more daughters survive, it is to be paid until her death. If, at that time, the widow is living, but all the daughters are dead, it ceased. If, at that time, the widow is dead, but the daughters—one or more—survive, it is not to be paid, and is only to be paid in the event both the widow and one or more daughters are then surviving, and then only until the death of the widow.

"This, to say, the least, is a strained and unnatural construction of the language employed by the testator, and is not supported by any correct rule of interpretation, and clearly at variance with the spirit of the bequest and evident intent of the testator, whose manifest purpose was to provide for the widow and daughters of his dead brother until the last survivor died.

"The controlling factor to be considered, as designated by the testator, in determining when the interest, both of the widow and daughters in the bequest was to close, is their death. This is the event upon the happening of which the testator fixed and defined as the time when the interest and right of the widow and daughters was to cease in the joint bequest or annuity. Why should the testator provide for the payment of the bequest to the widow until her death, if the daughters survived the reduction to $600, and not at all, if the daughters were dead at that time, if it was the purpose, as said by counsel, to provide for the widow, who did not inherit from him? This was surely a precarious provision, and does not seem to comport with the desire of the testator to provide for her.

"'Or,' used in connection with the event, upon the happening of which the bequest to the widow is to end—her death—is also used to qualify and define the event, upon the happening of which the bequest to the daughters is to terminate. It is to last (first) until the death of the widow; (second) or, more daughters then surviving, until the death of the one last surviving. The words 'or the last then surviving one of the daughters' must be construed so as to give, if possible, meaning to each and every one of them, as must every other word in the will.

"Why should the bequest be paid to the widow until her death, if at the time that it is reduced to $600 the daughters survive, and, if dead, not at all? We repeat, if it was the intent of the testator to provide for the widow, why should he make the existence of the widow and the survivorship of the daughters at that time the concurring conditions of its payment at all, and why terminate it at the death of the widow, regardless of the survivorship of the daughters of both her death and the time when the legacy is reduced to $600, as is the case, then having survived both contingencies? It is apparent that the testator intended to provide for the daughters in case they survived the death of their mother and the reduction of the legacy to $600. This is as far as the clause can be restricted under any possible construction. The daughters have fulfilled both conditions, and the legacy must be paid until the death of the last then surviving one of the daughters.

"The contention of the executor does violence to the evident purpose of the testator to provide for the widow and daughters. It does not even provide for the widow, as the executor says was the intent of the testator, because, if the daughters are dead when the time arrives at which the bequest is reduced to $600, it lapses, and she is not provided for at all. If, at that time the widow is dead, the daughters are not provided for, and the only contingency in which the widow and daughters are provided for is in case both survive the period when the bequest is reduced to $600, and then only until the death of the widow, according to the executor. But the will does not so read.

"'I give and bequeath to the widow and daughters of my Brother Richard, deceased, an annuity of twelve hundred dollars, * * * which annuity is to be diminished every third year * * * until it is reduced to the sum of $600, at which sum it is to remain until the death of the widow, or of the last then surviving one of the daughters.'

"The word 'then' used in the last sentence of the clause clearly refers to the death of the widow, and not to the time or event when the bequest is reduced to $600; or, if it does refer to this period, it simply means that if, at that time, either widow or daughters are then surviving, it is to last until the death of the last survivor. If the widow is living and the daughters are dead, the widow is to receive the legacy until her death. If the widow is dead and the daughters are living, until the death of the last then surviving one of the daughters. The will was so correctly interpreted by the executor for years."

Between the two arguments, we think the latter must prevail.

[2] The matter comes up on opposition filed by the two daughters to the homologation of the final tableau of the administration of the testamentary executor, Judge

Beattie. By. this final tableau, the executor proposes to distribute among the heirs a sum of $10,000, which he had theretofore retained and invested for meeting out of the interest the yearly payments to be made to the widow and daughters.

The executor suggests that one of the daughters has a life expectancy of 25 and the other of 35 years, and that the interpretation contended. for by the opponents would have the effect of perpetuating the succession or the executorship for that length of time, in violation of our law against trusts and perpetuities.

We do not think that question is one properly to be raised by the executor. He has gone on now for more than five years discharging the trust, and we see no reason for his not going on with it until some party having an interest chooses to object.

Judgment affirmed.